MANHATTAN CREDIT CO., INC. *v.* BREWER.

5-2278 341 S. W. 2d 765

Opinion delivered January 9, 1961.

*James R. Howard* of *Moses, McClellan, Arnold, Owen & McDermott,* for appellant.

*W. M. Herndon,* for appellee.

PAUL WARD, Associate Justice. Appellant, Manhattan Credit Co., Inc., repossessed a Ford automobile belonging to appellee, Mrs. Pat Brewer, under the provision of a chattel mortgage because of delinquent payments. Appellee sued for conversion, and the trial court, sitting as a jury, gave her judgment in the sum of $200. Appellant here seeks a reversal on the ground that there is no substantial evidence to show a wrongful taking of the automobile.

The chattel mortgage executed by appellee, dated April 22, 1959, shows that appellee was to pay $919.65 in fifteen equal monthly installments of $61.31. Pertinent language in the chattel mortgage reads as follows:.

"In case default be made in the payment of said debt . . . or any of the payments above scheduled . . . said Mortgagee at his option, without notice, is hereby authorized to enter upon the premises of the Mortgagor or other places where said property might be, and take possession of and remove said property, . . . and without legal procedure, sell the same and all equity of redemption of the Mortgagor therein . . . and out of the proceeds of said sale pay all costs . . .; and apply the residue thereof toward the payment of said indebtedness . . . rendering the surplus, if any, unto said Mortgagor. . . ."

It is not denied that appellee was delinquent in her payments at the time of the taking, and she does not challenge the right of appellant to repossess the automobile under the above provisions of the chattel mortgage provided the repossession had been made in a proper manner. She does insist however that the retaking in this instance was not proper but that it was wrongful, and that the evidence so shows. Appellant takes the opposite view, and that constitutes the prime issue presented on this appeal.

Before reaching the prime issue it is necessary to dispose of two other questions that have arisen.

*FIRST.* It is stated by appellant that a mortgagee (in a chattel mortgage such as this) has the same right under our decisions to repossess without legal process that the seller has under a conditional sales contract, citing *White River Production Credit Association* v. *Fears,* 213 Ark. 75, 209 S. W. 2d 294, and *Starling* v. *Hamner,* 185 Ark. 930, 50 S. W. 2d 612. We find that most of our decisions in this connection have dealt with conditional sales contracts, and we do not find that the above cited cases are sufficiently clear and in point to fully sustain appellant's contention. However, we deem

it unnecessary to decide this particular issue one way or the other in view of the conclusions hereafter reached. Rather than to do so, without the benefit of proper briefing, we choose to give appellant the benefit of any doubt and treat the chattel mortgage as if it were a conditional sales contract.

*SECOND.* Appellee first takes the position that this court should not re-examine the sufficiency of the evidence to sustain the judgment of the trial court because appellant did not make a motion for a directed verdict at the close of all of the testimony. To sustain this point appellee cites *Hot Springs Street Railway Company* v. *Hill,* 198 Ark. 319, 128 S. W. 2d 369 and *Dinet* v. *Rapid City,* 222 F. 497. Again we by-pass a full discussion and definite determination of this rule as it applies to our procedure for the reason that we think it would have no application in this particular case where the trial court acted both as judge and jury. In arguing the case before the trial court it would have been a useless gesture for appellant to have filed a motion asking the judge to direct himself to direct a verdict in its favor. The question of the sufficiency of the evidence was squarely before the trial judge and he could have in no way been misled.

The *prime issue* is whether there is substantial evidence to support the trial court's finding to the effect that appellant's acts in repossessing the automobile amounted to conversion. The applicable rule (briefly stated) as set forth in many of our decisions, appears to be that there is a conversion if force or threats of force are used to secure possession of the automobile.

In this case the act of taking the automobile is conceded. The circumstances of the taking are not materially in dispute, and in setting them out we view them in the light most favorable to sustain the judgment. Appellant's agent went to appellee's home and found the automobile in the driveway at a time when appellee was in the bathtub. While the agent was attempting to attach a towbar to the car appellee called her attor-

ney who told her the agent had no right to take the car without legal process. She so informed her husband and he in turn told the agent that they objected to him taking the car. The agent disregarded these objections and, without consulting appellee, towed the automobile to a service station to pick up a spare tire (belonging to the car) left for repair. While the agent was in the process of obtaining the spare tire appellee and her husband drove up to the filling station and demanded the agent to unhook the automobile. This the agent refused to do. Then appellee went to the right side of the agent's car and told him he couldn't take it, but this warning was ignored. At about this time appellee's husband went to the other side of the car and, while the agent was getting into the car, turned off the ignition. Thereupon the agent turned the ignition back on starting the motor, and started backing out of the filling station, causing Mr. Brewer to have to get out of the way. Thereupon the agent drove away with the automobile.

The case of *Kensinger Acceptance Corp.* v. *Davis,* 223 Ark. 942, 269 S. W. 2d 792, presented a factual situation somewhat similar to the situation in this case. Davis had left his Ford truck with the finance company barring some kind of a settlement, and the company refused to let him remove the truck. The question appeared to be whether or not the company had threatened force to prevent Davis from removing his truck. As set out in the opinion the branch manager, Mr. Enochs, testified: "Q. Did you at any time touch Mr. Davis or threaten any bodily harm to him? A. No, sir. Q. You told him he couldn't drive it off? A. I told him he wasn't going to leave in the truck." Following this the court said: "This was at a time when Davis was sitting in the truck with the key in his hand. It was not shown just how Enochs was going to prevent Davis from leaving in the truck except through violence. The evidence justifies a finding that Enochs' *statement was a threat of violence,* was so intended by him and so understood by Davis." (Emphasis supplied.) It appears to us that

the court, in the above cited case, was saying that Davis could not have driven the truck away without using force himself. Likewise in the case under consideration, it appears equally clear that Mrs. Brewer could not have prevented appellant's agent from driving her automobile away without her having to exercise force to prevent it.

The purpose of the rule against the use of threats of violence in these kind of cases appears to be that the conditional vendors may retake possession without legal procedure where and when they can do so peaceably and without incurring the risk of invoking violence. In the case of *Ellis* v. *Smithers,* 206 Ark. 247, 174 S. W. 2d 568, the court approved the following statement: "The conditional seller's right to possession of the goods sold on default of the buyer may be exercised without recourse to the courts by retaking possession provided this can be done peaceably; and this is especially true where the contract expressly so provides." In support of its right to take the automobile in this instance without legal process appellant relies upon our holdings in *Barham* v. *Standridge,* 201 Ark. 1143, 148 S. W. 2d 648; *Ellis* v. *Smithers, supra,* and *Rutledge* v. *Universal C. I. T. Credit Corporation,* 218 Ark. 510, 237 S. W. 2d 469. We find however that these cases are not in conflict with what we have heretofore said. In the *Barham* case the opinion states that there was evidence "that after the collision Mrs. Standridge brought the car to the motor company's garage and surrendered it, stating at the time that she was unable to pay for it." This testimony was contradicted by Mrs. Standridge, thus presenting a factual question for the jury. In the *Ellis* case the opinion states that: "Possession was obtained by appellees peaceably and without fraud." In the *Rutledge* case the opinion contained this statement: "Appellant did not give his permission, but he did not object. Massey then drove the car to appellant's house where Mrs. Rutledge removed some personal effects from the car."

From what we have heretofore said, it follows therefore that the judgment of the trial court must be, and it is hereby, affirmed.

Affirmed.

McFADDIN, J., concurs.