# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-2594
_____

| | |
|---|---|
| United States of America, | * |
| | * |
| Appellee, | * |
| | * |
| v. | * |
| | * |
| Joshua Thorpe, also known as Juice, | * |
| | * |
| Appellant. | * |

_____

No. 05-2627
_____

Appeals from the United States
District Court for the
District of Nebraska.

| | |
|---|---|
| United States of America, | * |
| | * |
| Appellant, | * |
| | * |
| v. | * |
| | * |
| Joshua Thorpe, also known as Juice, | * |
| | * |
| Appellee. | * |

_____

Submitted: February 14, 2006
Filed:  May 5, 2006
_____

Before WOLLMAN, FAGG, and ARNOLD, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Joshua Thorpe was convicted of conspiring to distribute crack cocaine and possessing a firearm in furtherance of a drug trafficking offense. The district court sentenced him to 180 months in prison. Thorpe appeals, arguing that there was insufficient evidence to convict him. The government cross-appeals, arguing that the sentenced imposed is unreasonable. We affirm the conviction, vacate the sentence, and remand to the district court for resentencing.

**I.**

Thorpe was charged with three counts of controlled substance violations. Count I charged Thorpe with conspiracy to distribute crack cocaine in violation of 21 U.S.C. §§ 841 and 846. Count II charged Thorpe with using, carrying, or possessing a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c). Count V charged Thorpe with being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).[1] Thorpe pleaded not guilty to each of these counts.

At trial, the government presented several witnesses who testified that Thorpe was a member of the Murdertown Gangsters, that the Murdertown Gangsters consistently worked together to sell crack cocaine, that Thorpe bought crack cocaine for the purpose of redistribution, and that Thorpe sold crack cocaine. Witnesses also testified that Thorpe regularly walked around with a firearm and carried a firearm while engaging in drug-related transactions. One witness testified that Thorpe armed

_____

[1]Thorpe was not charged in Counts III or IV of the indictment.

himself because he was afraid that someone would begin shooting at him while he was dealing drugs. Many of these witnesses had been charged with or convicted of similar offenses and had the opportunity to receive lower sentences in exchange for their testimony against Thorpe. The government did not present any physical evidence of wiretaps, drugs, drug money, drug records, a firearm, or packaging materials for drugs in its case against Thorpe. After the government rested, Thorpe moved for a judgment of acquittal, which the district court denied.[2] The jury returned a verdict of guilty on Count I of the indictment, specifically finding that Thorpe was responsible for at least 150 grams but less than 500 grams of a mixture or substance containing crack cocaine. The jury also returned a guilty verdict on Count II and a verdict of not guilty on Count V.

Sentencing occurred on May 19, 2005. In accordance with the Presentence Investigation Report (PSR), the district court applied the 2004 version of the U.S. Sentencing Guidelines. The PSR recommended that the base offense level for Count I was thirty-four because the jury specifically found that Thorpe was responsible for at least 150 grams but less than 500 grams of a mixture or substance containing crack cocaine. The PSR also noted, however, that under a preponderance of the evidence standard the reporting officer "would indeed find the defendant responsible for more than 1.5 kilograms of cocaine base." The government objected to the report, arguing that Thorpe was responsible for 1.5 kilograms or more of crack cocaine, which warranted a base offense level of thirty-eight for Count I. The district court overruled the government's objection, concluding that United States v. Booker, 543 U.S. 220 (2005), required that any factor which might increase a defendant's sentence must be found beyond a reasonable doubt.

The PSR also determined that Thorpe had two criminal history points and that he should receive a two-point increase for having committed the instant offense while

_____

[2]Thorpe did not offer any evidence at trial.

on probation. This resulted in a criminal history category of III. Thorpe moved for a downward departure pursuant to § 4A1.3 of the guidelines, arguing that reliable information indicated that a criminal history category of III substantially overrepresented the seriousness of his criminal history. Overruling the government's objection, the district court determined that a criminal history category of II more properly represented Thorpe's criminal history and granted Thorpe's motion, a decision from which the government has not appealed.

After determining that the base offense level for Count I was thirty-four and that the appropriate criminal history category was II, the district court determined that the applicable sentencing range for Count I was 168 to 210 months. The district court, however, expressed dissatisfaction with the guidelines. It explained that it was uncomfortable with the severity of controlled substance laws and with how little the government must prove in conspiracy cases. It also determined that methamphetamine is a far more serious drug than crack cocaine and that conspirators who are responsible for a certain amount of drugs over a longer period of time, rather than a shorter period, are less culpable. The district court then imposed a non-guidelines sentence of 120 months in prison for Count I—the statutory minimum for this offense. The district court determined that § 2K2.4(b) of the guidelines required that Thorpe receive a consecutive sentence of not less than sixty months on Count II. Accordingly, the district court imposed a sentence of 180 months in prison for Counts I and II.

## II.

Thorpe first argues that the evidence was not sufficient to sustain a conviction and that the district court erred in denying his motion for a judgment of acquittal. Specifically, Thorpe argues that "[w]ithout the testimony of convicted drug dealers, liars and people looking for better sentences [he] would not [have] been convicted." Appellant's Br. at 12.

We review *de novo* the sufficiency of the evidence, and we "must uphold the jury's verdict if, based on all the evidence and all reasonable inferences in favor of the verdict, any reasonable juror could find the defendant guilty beyond a reasonable doubt." United States v. Idriss, 436 F.3d 946, 949 (8th Cir. 2006) (internal quotations omitted); United States v. Chavez, 230 F.3d 1089, 1091 (8th Cir. 2000). On issues of credibility of witnesses, we defer to the determinations of the jury. United States v. Lopez, No. 04-2254, slip op. at 7, 2006 WL 987987 at *4 (8th Cir. Apr. 17, 2006) (en banc).

To convict a defendant of conspiring to distribute a controlled substance, the jury must have found beyond a reasonable doubt that a conspiracy to distribute a controlled substance existed, that the defendant knew of the conspiracy, and that the defendant knowingly participated in the conspiracy. United States v. Bordeaux, 436 F.3d 900, 903 (8th Cir. 2006). To convict a defendant of possessing a firearm in furtherance of a drug trafficking crime, the jury must have found a nexus between the defendant's possession of the firearm and the drug offense. United States v. Hamilton, 332 F.3d 1144, 1150 (8th Cir. 2003). Evidence that the firearm was used for protection, was kept near the drugs, and was in close proximity to the defendant during drug transactions suffices to support a jury verdict on this charge. See id.

Having reviewed the record, we conclude that the evidence was sufficient to convict Thorpe on Counts I and II. As recounted above, numerous witnesses testified that Thorpe was a member of the Murdertown Gangsters and worked together with them to buy and sell crack cocaine. Further, witnesses testified that Thorpe carried a firearm in connection with these transactions and for the purpose of protecting himself while dealing drugs. That many of these witnesses had criminal records or testified against Thorpe as part of their cooperation or nonprosecution agreements reflects upon their credibility, which is within the jury's province to determine.

**III.**

The government argues that the district court erred in sentencing Thorpe based on the drug quantity found by the jury beyond a reasonable doubt instead of on the amount proved by a preponderance of the evidence. We review *de novo* whether the district court properly applied the guidelines. Idriss, 436 F.3d at 950.

Judicial fact-finding based upon a preponderance of the evidence standard is permitted in sentencing provided that the guidelines are applied in an advisory manner. Booker, 543 U.S. at 266-67; United States v. Wade, 435 F.3d 829, 831 (8th Cir. 2006) (per curiam). If the district court fails to recognize that it has this authority, we will remand for resentencing unless the beneficiary of the error demonstrates that the error was harmless, such as when the district court would have imposed the same sentence absent the error. See Idriss, 436 F.3d at 951. As recounted above, the district court read Booker to require the application of a beyond-a-reasonable-doubt standard of proof to drug quantity determinations.[3] Because, as the probation officer's comment in the PSR suggests, the guidelines calculation might well have been different had the district court realized that, as explained in our post-Booker decisions, it could constitutionally find Thorpe accountable for a drug quantity greater than that found by the jury, Gutierrez, 437 F.3d at 737, Thorpe has failed to demonstrate that the district court's error was harmless.

_____

[3]In making this determination, the district court relied on our decision in United States v. Fellers, which held that a jury's determination that the defendant was responsible for between 50 and 500 grams of methamphetamine was binding on the district court in sentencing. 397 F.3d 1090, 1099-1100 (8th Cir. 2005). Although the district court's reliance on Fellers is understandable, we conclude that that aspect of Fellers has since been superseded by other Eighth Circuit decisions, such as United States v. Gutierrez, 437 F.3d 733 (8th Cir. 2006). See also, e.g., United States v. Pirani, 406 F.3d 543, 552 n.4 (8th Cir. 2005) (en banc); United States v. Morales, No. 05-2560, slip op. at 6., 2006 WL 1083954 at *4 (8th Cir. Apr. 26, 2006); United States v. Garcia-Gonon, 433 F.3d 587, 593 (8th Cir. 2006).

The government also argues that the district court erred in the extent of its departure from the guidelines range in imposing Thorpe's sentence on Count I. We need not address this issue, however, in light of our remand for resentencing.

We affirm the conviction, vacate the sentence, and remand to the district court for a determination of the drug quantity under a preponderance of the evidence standard and for the imposition of a sentence commensurate with the drug quantity determination.

_____